UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRANDON S. LaVERGNE (#424229)        CIVIL ACTION NO.

VERSUS                                25-104-SDD-EWD

STATE OF LOUISIANA, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 14, 2026.

                                                       *[signature]*
                                                       **ERIN WILDER-DOOMES**
                                                       **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRANDON S. LaVERGNE (#424229)                 CIVIL ACTION NO.

VERSUS                                          25-104-SDD-EWD

STATE OF LOUISIANA, ET AL.

### MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Brandon S. LaVergne ("Plaintiff"), who is representing himself and who is confined at the Louisiana State Penitentiary in Angola, Louisiana, filed this lawsuit under 42 U.S.C. § 1983 against the State of Louisiana and other defendants (collectively "Defendants") complaining that the conditions to which he is being subjected violate a settlement agreement reached in another case to which Plaintiff was not a party.[1]

### I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, this Court is authorized to dismiss an action or claim against a governmental entity or an officer or employee of a governmental entity if the Court is satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted.  Screening under § 1915A is conducted before service of process and dismissal is proper as to any claim that is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[2]

---

[1] R. Doc. 1. Documents in the Court record are referred to as "R. Doc. __." The document that initiated this case is titled a "Motion to Enforce Settlement Agreement." Plaintiff attempted to file this document in the case in which a settlement was reached—*Whitmore v. Cain*, No. 14-4 (M.D. La.), but the document was filed as a new suit because Plaintiff was not a party to *Whitmore* case.

[2] *See* 28 U.S.C. §1915A.

To determine whether the complaint states a claim under § 1915A, courts apply the same standard used for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] This means that the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

## II.    PLAINTIFF CANNOT STATE A CLAIM BASED ON THE SETTLEMENT AGREEMENT

Plaintiff complains that the conditions of his confinement violate the terms of a settlement agreement reached in another case to which he was not a party. Specifically, it appears that Plaintiff is in what he refers to as a "transition program."[7] He complains of the following: (1) there is no longer a transition dorm to allow inmates to transition from long term cell confinement to a dorm (the dorm for the program appears to have been allocated to another use, specifically for a drug rehabilitation program); (2) those in transition program no longer have the same privileges as general population (visits, canteen access, access to the medical room, walking to chow hall, access to a computer based system for emails, music, video visits, etc.); and (3) inmates are held for over two years in the transition program in violation of the agreement.[8]

---

[3] *Plascencia-Orozco v. Wilson*, 773 Fed.Appx. 208, 209 (5th Cir. 2019) (citation omitted); *Hart v. Hairston*, 343 F.3d 762, 763-64 (5th Cir. 2003).

[4] *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.*

[7] R. Doc. 1-1, p. 3 ("In violation of the settlement agreement I have been held in the so called transition program for over the two year time limit.").

[8] R. Doc. 1-1, pp. 1-3. Plaintiff specifically claimed he had been held in the transition program for almost 3 years at the time suit was filed. *Id.* at p. 3.

2

Through these claims, Plaintiff is attempting to enforce a settlement agreement in another case because his own efforts to challenge his stay in restricted confinement and the conditions therein have consistently failed. Though creative, Plaintiff still cannot state a claim using the settlement agreement from the *Whitmore* case.[9] First, Plaintiff does not have standing to enforce a settlement agreement to which he was not a party.[10] Further, even if Plaintiff did have standing, he could not state a facially plausible claim for violation of the alleged settlement agreement because "a remedial court order, standing alone, does not serve as a basis for section 1983 liability."[11] Plaintiff must be able to state a claim on his own without reliance on the settlement agreement reached in *Whitmore*. As he has been told before, Plaintiff cannot do so on these facts.

### III.    PLAINTIFF'S CLAIMS REGARDING THE CONDITIONS OF CCR ARE MALICIOUS

Though couched as a complaint regarding revocation of privileges that were a part of a transitional program, the removal of these privileges appears to have resulted in Plaintiff reverting to some of the regular conditions of closed cell restriction ("CCR").[12] To the extent Plaintiff complains regarding the conditions of CCR or the lack of due process for being kept in CCR, such claims are subject to dismissal as malicious. Repetitious litigation of virtually identical causes of action is subject to dismissal as malicious.[13] It is proper to dismiss an action on the basis that it is

---

[9] The settlement agreement in Whitmore is not part of the record in that case; however, review of the docket establishes that Plaintiff is not a party to the Whitmore case, which was an individual suit, not a class action.

[10] *Davis v. J.P. Morgan Chase Bank, N.A.*, No. 14-169, 2014 WL 2854671, at *5 (N.D. Tex. June 23, 2014) ("Plaintiffs have no standing to enforce an agreement…to which they ae not parties."), citing *Shatteen v. JP Moran Chase Bank, N.A.*, 519 Fed.Appx. 320, 321 (5th Cir. 2013); *see also Puissegur v. U.S. Postal Service*, No. 95-0592, 1996 WL 185812, at *4 (E.D. La. 1996) (dismissing claims of the plaintiff, an individual employee, based on breach of a settlement agreement negotiated by a union under a collective bargaining agreement).

[11] *Angton v. Collier*, No. 21-40428, 2022 WL 3287955 (5th Cir. 2022), quoting *Woods v. Edwards*, 51 F.3d 577, 582 (5th Cir. 1995) (upholding dismissal of due process claims based on consent decree).

[12] R. Doc. 1, p. 1.

[13] *See Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir.1988) (*per curiam*). *See also Milton v. Gusman*, No. 10-3309, 2010 WL 5376459 (E.D. La. Oct. 6, 2010) ("It has long been resolved that repetitious litigation raising the same cause of action as a previous or pending lawsuit is subject to dismissal under § 1915(e)(2)(B) and § 1915A as malicious.").

malicious and frivolous if it duplicates claims raised by the same plaintiff in previous or pending litigation.[14] To the extent Plaintiff complains here regarding the conditions of restrictive confinement, the process for release from restrictive confinement, and/or the length of time he has been in restrictive confinement, this action is duplicative and malicious considering the numerous times Plaintiff has brought complaints rooted in these same facts.[15] The claims regarding process for release and length of time in restricted confinement are essentially due process claims. Plaintiff has brought similar claims on numerous occasions. Most recently these claims were examined and dismissed in *LaVergne v. Vannoy*, No. 22-470 (M.D. La.) (dismissing Plaintiff's claims regarding the process for release from restrictive confinement and his claims regarding the conditions of restrictive confinement with prejudice as they had already been adjudicated).[16] The Fifth Circuit has also previously affirmed dismissal of these claims.[17] The conditions to which LaVergne is held when in CCR as noted in this action are not substantially different from those already examined by the Fifth Circuit, which were determined not to rise to the level of a constitutional violation.[18]

---

[14] *See Roberson v. Breen*, 444 Fed.Appx. 841, 842 (5th Cir. 2011).

[15] R. Docs. 1-1; 4.

[16] *See LaVergne v. Vannoy*, No. 22-470 (M.D. La.), R. Docs. 37, 56.

[17] *LaVergne v. Stutes*, 82 F.4th 433 (5th Cir. 2023).

[18] *Id.* at 436-37 (notwithstanding confinement to cell for twenty-three hours per day, prisoner was permitted two contact visits per month, was able to make phone calls, cook food, exercise for a hour per day and was permitted outdoor recreation three days per week, albeit in limited space; restrictions on visiting privileges and email access did not rise to the level of an Eighth Amendment violation). The one difference between the conditions in *Stutes* and those here that may be of any importance is that *after* this suit was filed, contact visits appear to have been taken away. R. Doc. 1, pp. 1-2. Plaintiff could not have exhausted any claim based on the removal of contact visits because those claims arose after the filing of this action, as he states in R. Doc. 2 that "on Saturday" appearing to refer to February 8, 2025, as the document was filed on February 11 2025, that Trent Miller was denied a contact visit and that on "[t]oday a Warden Shannon Demars confirmed this was not a mistake and that the administration had taken our contact visits." R. Doc. 2, p. 2. Because this action was filed on January 19, 2025, it is impossible for events occurring after the action began to have been exhausted. To the extent contact visits were taken away and to the extent this may change any analysis regarding LaVergne's conditions of confinement or due process, those claims are subject to dismissal for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e. Plaintiff's claim regarding being removed from a church service on February 2, 2025 would also be subject to dismissal as unexhausted for the same reason. Accordingly, to the extent he seeks to bring claims based on either of the foregoing or on any other event that occurred after the filing of this action, those claims would be subject to dismissal as unexhausted, and Plaintiff must exhaust his claims regarding confinement in CCR under the new conditions before filing suit.

Similarly, there can be no violation for the alleged lack of transition program or being held for more than two years, even if in restricted confinement because the United States Court of Appeals for the Fifth Circuit, which opinions are binding on this Court, has already determined that the conditions to which Plaintiff is exposed in restricted confinement do not rise to the level of an atypical and significant hardship as required for a due process claim.[19] Accordingly, to the extent Plaintiff complains that the removal of the privileges of the transitional program would result in the imposition of the conditions of CCR, those claims are subject to dismissal as duplicative, malicious, and legally frivolous.[20]

### IV. PLAINTIFF CANNOT STATE A CLAIM BASED ON THE CONDITIONS OF THE TRANSITION PROGRAM

To the extent Plaintiff intends to complain, not of the conditions of CCR, but rather the lack of due process in being released from the transition program, he also cannot state a claim.[21] By his own admission, the transition program was *less* restrictive than CCR, as it appears cell doors remained unlocked during the program, he was allowed to walk to the chow hall, and he was allowed to attend church services.[22] Considering the less restrictive conditions and that he was in the transition program for far less time than he was in CCR in *Stutes* (approximately three years in

---

[19] *Stutes*, 82 F.4th at 436-37.

[20] Some claims Plaintiff seeks to bring may be "new" but those are not properly joined, as explained below. Even if the claims regarding CCR are not considered duplicative, they are subject to dismissal on the merits because the conditions, which were analyzed in *Stutes* are essentially the same conditions to which Plaintiff is now exposed, and he has been exposed to those conditions for less time than in *Stutes* (since approximately January 2025). R. Doc. 2, pp. 1-3 (noting privileges of the transitional program began being rescinded in January 2025, leading to CCR-like conditions). If a due process claim did not arise after five years in these conditions, then certainly one has not arisen in less than one year. *Stutes*, 82 F.4th at 436-37.

[21] To the extent Plaintiff complains that he was moved from the transitional dorm back to CCR or CCR type cells (R. Doc. 1-1, p. 2), "he does not have a constitutional right to a particular housing assignment." *Brown v. Wilkinson*, No. 11-2180, 2012 WL 1711585, at *2 (W.D. La. April 5, 2012). Additionally, the conditions of CCR do not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," as discussed in *Stutes*. 82 F.4th at 436, so Plaintiff cannot state a claim arising from the move.

[22] R. Docs. 1-1, pp. 2-3; 2, pp. 1-3.

this case; five years in *Stutes*),[23] Plaintiff cannot state a due process claim related to the length of time he has been in the transitional program.[24] Therefore, this claim should also be dismissed.

### V.  CLAIMS IN THE AMENDED COMPLAINT UNRELATED TO THE TRANSITION PROGRAM AND/OR CCR ARE IMPROPERLY JOINED

Through an amended complaint, Plaintiff attempts to bring claims unrelated to those in the original complaint. These additional claims are subject to dismissal as improperly joined in this action.[25] Rule 18 of the Federal Rules of Civil Procedure is a broad joinder rule that allows parties to "join as many claims as it has against an opposing party." The official commentary of Rule 18 states, "it is emphasized that amended Rule 18(a) deals only with pleading," and "a claim properly joined as a matter of pleading need not be proceeded with together with the other claims if fairness or convenience justifies separate treatment."[26] Rule 20 permits joinder of defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and "any question of law or fact common to all defendants will arise in the action." Further, under Rules 18(a) and 20, if the claims arise out of the different transactions and do not involve all defendants, joinder should not be allowed.[27] In other words, in a multiparty case, if claim one is against five defendants

---

[23] R. Doc. 1, p. 3; *LaVergne*, 82 F.4th at 436.

[24] As explained in *Stutes*, *Id.* at 436, in analyzing a due process claim related to conditions of restrictive confinement, the Court must consider the severity and duration of confinement. *Id.* Considering that the conditions in the transition program are less severe than those in CCR and that Plaintiff was in the program for less time than he was in CCR, he cannot state a claim. It does not appear that Plaintiff is attempting to state an Eighth Amendment claim for the conditions of his confinement in the transition program. If he is, he cannot do so because he has not alleged any facts to establish that he is being deprived of the "minimal civilized measure of life's necessities" or that any prison official has been deliberately indifferent to his health or safety. *Id.* at 437.

[25] To the extent Plaintiff includes more discussion of restricted confinement, the amended complaint does not change the above analysis recommending dismissal of those claims.

[26] Fed. R. Civ. P. 18: Notes of Advisory Committee of Rule—1966 Amendment.

[27] *Shafer v. Davis*, No. 20-167, 2020 WL 6489094, at *5 (S.D. Tex. Nov. 4, 2020), citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1583 (2d ed. 1990).

and claim two is against only one of those defendants, joinder should not be allowed, unless all claims arose out of the same transaction and present common questions; if the claims arise from different transactions and do not involve all defendants, joinder should not be allowed.[28]

Further, severing unrelated claims brought by a prisoner is often warranted even if some claims involve related defendants because allowing several unrelated claims to proceed in one action would thwart the purposes of the Prison Litigation Reform Act ("PLRA").[29] Indeed, the Fifth Circuit has discouraged "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision.[30]

Plaintiff has attempted to join many claims in this action through the amended complaint that are not sufficiently related to the claims brought in the original complaint regarding the transition program/restricted confinement. To the extent the amended complaint complains of a denial of access to the courts due to special procedures required by the Supreme Court of the United States of America, such claims are not properly joined in this action, and this Court has already opined that an action based on these claims would likely be unsuccessful.[31] The other

---

[28] 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1583 (2d ed. 1990).

[29] *See Spurlock v. Jones*, No. 16-01031, 2016 WL 7443644, at *1 (W.D. La. Dec. 22, 2016), *judgment entered*, 2016 WL 7447843 (W.D. La. Dec. 22, 2016), and *aff'd*, 709 Fed.Appx. 293 (5th Cir. 2018) (ensuring that unrelated claims against different defendants are brought in separate actions safeguards the required fees in the PLRA and ensures that inmates are given the appropriate strikes under 28 U.S.C. § 1915(g)).

[30] *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998) ("We doubt that Congress intended that § 1915(g) could be so facilely circumvented by the creative joinder of actions.").

[31] R. Doc. 4, pp. 5-6. *See LaVergne v. Stutes*, Civ. Action No. 17-1696 (M.D. La.) at R. Doc. 155, p. 4 ("plaintiff is not likely to succeed on the merits. Of the 7,000-8,000 petitions filed each term, the Supreme Court grants certiorari and hears oral argument in only about 80 cases…plaintiff is not likely to succeed on his assertion that the Fifth Circuit entered a decision in conflict with the decision of another court of appeals on the same important matter"—referencing the Fifth Circuit's denial of Plaintiff's same complaints regarding restricted confinement that he makes here). This claim is also not considered to be part of Plaintiff's claims related to the transition program/CCR because it appears any inmate who is not proceeding as a pauper at the Supreme Court would face similar obstacles as Plaintiff in filing a writ of certiorari. *See id.* (noting the stringent filing requirements of the Supreme Court, indicating the likely improbability that such requirements can be fulfilled at a prison). Though Plaintiff has made claims, generally, regarding limited access to the law library as a result of his housing assignment in restricted confinement, the claim he attempts to bring in the amended complaint is a specific claim of denial of access to the courts arising from a

claims made in the amended complaint unrelated to the claims brought in the original complaint range from complaints regarding "bad advice" given by inmate counsel substitutes, insufficient training for inmate counsel substitutes, interference with legal mail, retaliation, and deliberate indifference to a serious medical need—these claims are clearly distinct from the claims regarding the transition program/CCR, discussed above, and not properly joined in this action.[32] Should LaVergne wish to bring these claims, he must do so in separate actions.

## VI.  Recommendation

**IT IS RECOMMENDED** that the claims brought in the original and amended complaints related to the transition program and/or restricted confinement (including lack of transition dorm, conditions, lack of privileges, and length of time held) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915A for failure to state a claim.

**IT IS FURTHER RECOMMENDED** that the claims in the amended complaint unrelated to Plaintiff's claims regarding the transition program and/or restricted confinement be **DISMISSED WITHOUT PREJUDICE** as improperly joined pursuant to Federal Rules of Civil Procedure 18 and 20.

---

particular instance where he was unable to meet the Supreme Court's filing requirements because of inmate counsel substitute's alleged lack of knowledge of the filing requirements and apparent unwillingness to assist Plaintiff. This particular claim is not sufficiently related to be joined with the claims in the original complaint.

[32] Plaintiff also alleges that another inmate encouraged him to file lawsuits and that Plaintiff is a three-striker as a result of this "bad advice." It does not appear that Plaintiff is attempting to bring a claim related to this "bad advice" R. Doc. 4, p. 7. Regardless, to the extent Plaintiff is attempting to state a claim from these facts, that claim would also not be properly joined in this action. The same is true regarding Plaintiff's allegations of poorly trained inmate counsel substitutes. R. Doc. 4, p. 7. Much of the remainder of the amended complaint makes continued allegations regarding restricted confinement, which are subject to dismissal as duplicative, as discussed above, and continues to complain regarding the incompetence of inmate counsel substitute. To the extent Plaintiff makes claims of retaliation and interference with his mail, those must also be brought in a separate suit, as they are not properly joined in this action. R. Doc. 4, pp. 21-24. Similarly, his claims against Paul Toce and Jacob Johnson are not related to the claims originally brought and are not properly joined in this action. R. Doc. 4, p. 25.

**ORDER**

Considering the recommendation of dismissal, **IT IS ORDERED** that all pending motions are **DENIED** without prejudice to re-urging if the case is not dismissed.[33]

Signed in Baton Rouge, Louisiana, on January 14, 2026.

*[signature]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[33] The motion seeking to preserve evidence involves a retaliation claim not before this Court, so is subject to denial. R. Doc. 5. The Supplemental Memorandum with New Facts that seeks to amend this action again makes allegations of "more retaliation" that involves conduct occurring after the filing of this action, which claims would be subject to dismissal as unexhausted. R. Doc. 6. To the extent the Supplemental Memorandum alleges "the administration is STILL not in compliance with the settlement agreement," those claims fail for the same reasons as stated above. R. Doc. 6. To the extent Plaintiff complains of the lack of church services, those claims are duplicative because Plaintiff already has a case pending that makes these allegations. *LaVergne v. Vannoy*, No. 22-470 (M.D. La.). The final motion simply takes further issue with the lack of compliance with the settlement agreement. R. Docs. 7 & 7-1.